IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| SANDRA A.,[1] ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-417-SLS |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**MEMORANDUM OPINION**

In this action, Plaintiff Sandra A., proceeding *pro se*, seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court on cross-motions for summary judgment, which have been fully briefed,[2] making this matter ripe for review. (ECF Nos. 15, 17, 18, 24.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1). (ECF Nos. 12, 19, 21.)

Plaintiff requests that the Commissioner's decision be vacated and remanded for an award of benefits, or in the alternative, reconsideration of the evidence. (ECF No. 3, at 3-4; ECF No. 17,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.
[2] Following the Fourth Circuit's decision in *Milla v. Brown*, 109 F.4th 222, 233-34 (4th Cir. 2024), the Court issued Plaintiff a Roseboro Notice in an Order dated August 5, 2024. (ECF No. 23.) The Commissioner had previously issued a Roseboro Notice simultaneously with his Motion for Summary Judgment. (ECF No. 20.)

at 1; ECF No. 24, at 1-2.)  As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in evaluating her mental conditions and resulting limitations, and she challenges the ALJ's residual functional capacity ("RFC") finding.  (ECF Nos. 15, 17, 24.)  In response, the Commissioner contends that the ALJ properly considered and analyzed Plaintiff's RFC in accordance with the regulations and that substantial evidence supports his findings.  (ECF No. 18, at 11-19.)

For the reasons set forth below, substantial evidence supports the Commissioner's final decision that Plaintiff is not disabled under the Act, and the Commissioner applied correct legal standards in reaching the decision.  Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 17), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 18), and AFFIRM the final decision of the Commissioner.

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI on May 28, 2020, alleging disability beginning on January 1, 2020.  (Administrative Record ("R.") at 26, 158-59, 323.)[3]  In her application, Plaintiff alleged that she suffered from depression, anxiety, panic disorder, hearing voices, and an inability to get along with others.  (R. at 292.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 154-56, 158-59.)  Plaintiff requested a hearing before an ALJ, and one was held on June 16, 2022.  (R. at 51-63, 216-18.)  Plaintiff was represented by counsel at the hearing.  (R. at 51.)

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

On June 29, 2022, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Social Security Act ("the Act") from January 1, 2020 through the date of the decision.[4] (R. at 26-42.) Plaintiff appealed to the SSA Appeals Council, which considered an additional piece of evidence and subsequently adopted the substantive findings of the ALJ. (R. at 1-7.) Thus, on April 27, 2023, the ALJ's decision became the final decision of the Commissioner. (R. at 1-7.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

### A. Social Security Disability Benefit Appeals

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial

---

[4] The record reflects, and the ALJ acknowledged, that Plaintiff previously filed for Title II and XVI benefits on March 30, 2015 and August 13, 2018. (R. at 26-27, 67-101.) These claims were denied initially, upon reconsideration, and in written decisions by two separate ALJs. (R. at 26, 67-101.) The record contains no evidence of an appeal of those prior decisions. (R. at 27.)

3

gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ must determine whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant

4

evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### B. Liberal Construction of *Pro Se* Pleadings

Courts must construe *pro se* pleadings liberally. *See Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. June 24, 1999). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, a court need not attempt "to discern the unexpressed intent of the plaintiff." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Laber v. Harvey*, 438 F.3d

404, 413 n.3 (4th Cir. 2006). The Fourth Circuit has found that liberal construction of a *pro se* pleading does not require district courts to "conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276, 1278 (4th Cir. 1985). Indeed, in social security cases, reviewing courts are "not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09-cv-622, 2010 WL 6621693, at *7 n.7 (E.D. Va. Dec. 29, 2010) (quoting *Womack v. Astrue*, No. 5:07-cv-167, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008)). Rather, a reviewing court should "scrutinize the record as a whole to determine whether the conclusions reached are reasonable and whether the [ALJ] applied correct legal standards to the evidence . . . ." *Id.* (quoting *Womack*, 2008 WL 2486524, at *5). A court must correct "blatantly obvious prejudicial errors" despite a claimant's failure to bring those to the court's attention. *Elise J. v. Kijakazi*, 3:22-cv-440-DJN, 2023 WL 4056057, at *3 (E.D. Va. May 30, 2023), *report and recommendation adopted by* 2023 WL 4055365 (E.D. Va. June 16, 2023). The Court shall, therefore, conduct a review of the record to ensure that the ALJ made no clear error of law and that his findings are supported by substantial evidence. *Id.*

### III. THE ALJ'S DECISION[5]

After finding that Plaintiff met the insured status requirements of the Act through December 31, 2021 (R. at 30), the ALJ analyzed Plaintiff's claims in accordance with the five-step evaluation process. (R. at 26-42.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2020 (the alleged onset date). (R. at 30.) At step two, the ALJ

---

[5] Because Plaintiff challenges the ALJ's conclusions regarding the limiting effects of her mental impairments (ECF No. 15, at 1; ECF No. 17, at 1), the Court restricts its discussion of the ALJ's decision and record evidence to those impairments.

found Plaintiff suffered from the following severe impairments: personality disorder, depression, anxiety, and post-traumatic stress disorder ("PTSD"). (R. at 30-31.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 31-33.)

The ALJ then determined Plaintiff's RFC. (R. at 33-40.) Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [Plaintiff] can understand, remember, and carry out simple instructions and make simple work-related decisions. She can work at a consistent pace throughout the workday but not at a production rate pace where tasks must be performed quickly, such as that found on an assembly line or conveyor belt. She can tolerate occasional interaction with coworkers and supervisors, in jobs with no public contact or tandem work tasks. Additionally, she can tolerate occasional changes in routine work settings and procedures. She should have very little independent decision making with no responsibility for the safety of others.

(R. at 33.) The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 34.)

Regarding symptoms, Plaintiff testified that she suffered a head injury in 1996 and continues to have headaches two to three times per week with symptoms lasting 30 to 60 minutes each time. (R. at 34.) Plaintiff stated that her anxiety exacerbates her headaches but that she treats her symptoms with over-the-counter pain relievers. (R. at 34.) Plaintiff also receives treatments for mental health symptoms stemming from her depression, anxiety, and PTSD. (R. at 34.) Plaintiff attested to experiencing auditory hallucinations and paranoia. (R. at 34.) Among other limitations, Plaintiff stated that her impairments make it difficult for her to remember, complete

7

tasks, concentrate, understand, follow instructions, talk, hear, sleep, and get along with others. (R. at 34.)

Based on the medical evidence, Plaintiff's daily activities, medical opinion evidence, and other record evidence, the ALJ found Plaintiff's statements about "the intensity, persistence and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (R. at 35.) Regarding the medical evidence, the ALJ acknowledged Plaintiff's "history of outpatient primary care management of mental health symptoms." (R. at 37.) Although Plaintiff endorsed ongoing memory loss, sleep issues, depression, headaches, anxiety, social isolation, and dependence on her mother, treatment records showed "linear, logical, and goal directed thought processes; full and reactive affect; normal mood; appropriate behavior; and no evidence of acute thought content irregularities," and "mental status assessments noted normal orientation, affect, thought content, and perception." (R. at 37.) Plaintiff also reported hallucinations and hearing voices, but "medical professionals noted no signs [of Plaintiff] responding to internal stimuli" or attributed those auditory hallucinations as a symptom of anxiety. (R. at 37.) At a 2020 consultative psychological evaluation, Plaintiff reported a history of seizures but denied any subsequent seizure study. (R. at 37.)

Records from 2021 and 2022 showed "ongoing medical management of symptoms and outpatient psychotherapy." (R. at 36.) Assessments noted good memory, normal psychomotor activity, no gross cognitive defects, and normal mood, behavior, thought content, and judgment. (R. at 36.) At one appointment, Plaintiff endorsed feelings of sadness, and her medication was adjusted. (R. at 36.) Plaintiff also endorsed feelings of paranoia and experiencing night terrors and crying spells, but other times denied depression, stress, and anxiety. (R. at 36.) Plaintiff

reported receiving emotional support from her family and animal companions. (R. at 36.) Records documented Plaintiff's medication compliance and efficacy as excellent, and Plaintiff reported no acute side effects from medications. (R. at 36.)

The ALJ concluded that the "findings of [Plaintiff's] treating and examining sources do not support the severity of restrictions that [Plaintiff] has alleged." (R. at 38.) Plaintiff's treatment for her mental health symptoms "has remained entirely conservative, routine, and outpatient," with Plaintiff responding well to her prescribed medications without side effects. (R. at 38.)

The ALJ also found Plaintiff's daily activities inconsistent with her testimony of severe mental limitations. (R. at 38.) Specifically, the ALJ noted that Plaintiff could drive (although she did so infrequently), lived alone (although her mother stays with her as needed), and had "some ongoing capacity to care for personal needs, prepare simple meals, assist with household chores, shop for personal items, watch television, communicate with family members, attend counseling, and maintain doctor's appointments." (R. at 34-35.) In addition, up until 2018, she worked part-time for many years following her 1996 car accident. (R. at 38.) At a 2020 consultative examination, Plaintiff reported being fully independent in her hygiene tasks and able to keep her house "exceptionally clean." (R. at 37.) A Cooperative Disability Investigations Unit summary report included observations of Plaintiff at a restaurant in 2020 during which time she communicated with others, ordered food and drink, made a phone call, and maintained a Facebook page. (R. at 36.) In 2021, Plaintiff reported plans to travel to Florida to visit with relatives. (R. at 35.) In 2022, Plaintiff could leave her house every other week with her mother for hair and nail appointments. (R. at 36.) Based on Plaintiff's reported activities and other record evidence, the ALJ found Plaintiff moderately restricted in all aspects of mental functioning and markedly limited in the area of social functioning. (R. at 38.)

The ALJ also considered the medical opinions and prior administrative medical findings as required by 20 C.F.R. §§ 404.1520c and 416.920c. (R. at 34.) The ALJ considered the previous ALJ opinions from 2017 and 2019. (R. at 33.) Both prior decisions "adopted exclusively non-exertional limitations." (R. at 33.) The ALJ gave these previous opinions partial weight, finding even "greater mental limitations" appropriate based on the current record. (R. at 33.)

The ALJ also considered a prior consultative evaluation conducted by Dr. Paul Candido in 2015. (R. at 35.) Plaintiff reported that she "could not remember any of her life prior to her 1996 accident" but was "working part time at a Fast Mart deli department, living alone, and caring for a pet." (R. at 35.) She stated that her mother performed all her household chores. (R. at 35.) Dr. Candido performed multiple tests on Plaintiff and found that "the results were preclusive of performing even the most repetitive and simple tasks." (R. at 35.) At the same time, Dr. Candido found that the extent of Plaintiff's memory impairment and intellectual functioning displayed at the evaluation "appeared unrealistically severe for an individual who had been working for several years on a part time basis," was "capable of a normal expressive vocabulary," and could drive independently. (R. at 35.) The ALJ found Dr. Candido's evaluation to be of limited persuasive value because "the extreme intellectual restrictions and endorsed significant symptom exacerbations were not supported by [Plaintiff's] clinical presentation at the time of the evaluation." (R. at 35, 37.) Further, the findings were inconsistent with Plaintiff's "normal vocabulary and documented ability to drive and work part-time," along with her conservative treatment history. (R. at 37.)

In September of 2020, Karen L. Russell, Psy.D. saw Plaintiff for a follow-up consultative psychological evaluation. (R. at 37.) Dr. Russell diagnosed Plaintiff with a personality disorder and attributed Plaintiff's endorsed auditory hallucinations to her anxiety, as "they did not appear

10

consistent with a thought disorder." (R. at 37.) She found that Plaintiff would likely decompensate and experience tension and worry that would impact her concentration in the workplace. (R. at 37.) She noted that Plaintiff had "no interest in working with others" and would likely require high levels of supervision. (R. at 37.) The ALJ found Dr. Russell's conclusions unpersuasive. (R. at 36.) The "lack of acute complications noted during the mental status evaluations and [Plaintiff's] observed capacity to be fully independent in her hygiene needs and maintain a clean household" did not support the severe functional restrictions recommended by Dr. Russell. (R. at 36.) The ALJ also found Dr. Russell's conclusions inconsistent with Plaintiff's "entirely conservative" treatment history, lack of acute mental complications, and her "documented abilities to drive, work on at least a part-time basis, and live alone." (R. at 36.)

In late 2020, state agency examiners Drs. Jack Hutcheson and Nicole Sampson concluded that Plaintiff could perform work at all exertional levels which accounted for no more than moderate restrictions in understanding, remembering, applying information, social functioning, concentration, persistence, and maintaining pace. (R. at 38-39.) Reconsideration assessments in October 2021 endorsed the same findings and conclusions. (R. at 39.) The ALJ found these assessments, overall, to be somewhat persuasive. (R. at 39.) The assessments were well-supported by the grossly conservative nature of Plaintiff's treatment, but the updated evidence received at the hearing level, including psychotherapy treatment records and Plaintiff's somewhat consistent testimony, supported greater mental restrictions regarding social interactions. (R. at 39.)

In October 2020, Shannon D. Burris, CFNP completed an assessment endorsing marked to extreme limitations in all aspects of workplace functioning, concluding that Plaintiff would miss more than three days of work per month and be off-task 25 percent of the workday. (R. at 39.) In December 2020, Debra Moore-Zierow, FNP-BC, PMHNP-BC completed a separate assessment

11

and concluded that Plaintiff was emotionally disabled. (R. at 39.) Notably, she stated that Plaintiff qualified for an emotional support animal. (R. at 39.) Nurse Practitioner Moore-Zierow completed additional assessments in September 2021, opining that Plaintiff experienced significant difficulty with both short- and long-term memory, maintaining focus, and retaining information. (R. at 39.) She concluded that Plaintiff's "severe social anxiety would cause difficulty in assimilating in a work environment." (R. at 39.) The assessment noted that Plaintiff's mother acted as a caregiver and slept in her home every night. (R. at 39.) In December 2021, Tamaria Featherlin, MSN, MBA-HA, PMHNP-BC noted Plaintiff's difficulty experiencing positive emotions, her "excessive anxiety," and her inability to interact with others in both public and private spaces "without feeling overwhelming fear and suffering [from] a dissociative disturbance." (R. at 39.) Nurse Practitioner Featherlin found ongoing marked cognitive, affective, and behavioral symptoms stemming from the 1996 car accident. (R. at 39.) She also stated that Plaintiff required the presence of her mother or stepfather each night. (R. at 39.)

The ALJ found these assessments unpersuasive because the "restrictions are not supported by reference to clinical findings throughout the record that would endorse the severity of restrictions." (R. at 39.) In addition, the ALJ found these assessments inconsistent with the "entirely conservative, routine, and outpatient nature" of Plaintiff's treatment, lack of acute complications, and her endorsed activities of daily living. (R. at 39.) The ALJ concluded that the record supported Plaintiff's ability to perform unskilled work consistent with the RFC restrictions. (R. at 40.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff had no past relevant work. (R. at 40.) The ALJ then determined Plaintiff's vocational factors, including that she met the definition of a younger individual and had at least a high school education. (R. at 40.)

At step five, the ALJ concluded that jobs exhibited in significant numbers in the national economy that Plaintiff could perform given her RFC and vocational factors. (R. at 40-41.) Based on the vocational expert's testimony, the ALJ determined that Plaintiff could perform the jobs of cleaner II, groundskeeper, and floor cleaner. (R. at 41.) Therefore, the ALJ found Plaintiff not disabled from January 1, 2020 through June 28, 2022. (R. at 41-42.)

## IV.   ANALYSIS

The ALJ applied correct legal standards in analyzing Plaintiff's disability claims, and substantial evidence supports the ALJ's finding that Plaintiff can perform some work in the national economy despite her impairments. The ALJ reasonably concluded that Plaintiff's conservative, routine, and outpatient treatment did not support the severity of restrictions Plaintiff alleged. (R. at 38.) In addition, Plaintiff's treating and examining sources observed normal mental status findings and noted Plaintiff's condition as improving with effective medication and counseling. (R. at 38.) The ALJ also properly considered Plaintiff's reported activities, finding that they too supported a capacity to perform unskilled work consistent with the adopted RFC restrictions. (R. at 38.)

Substantial evidence supports the ALJ's conclusion that Plaintiff could perform work at all exertional levels with the following mental limitations: (1) Plaintiff can understand, remember, and carry out simple instructions; (2) Plaintiff can make simple work-related decisions; (3) Plaintiff can work at a consistent pace through the workday but not at a production rate pace where tasks must be performed quickly; (4) Plaintiff can tolerate occasional interaction with coworkers and supervisors but should have no public contact or tandem work tasks; (5) Plaintiff can tolerate occasional changes in routine work settings and procedures; and (6) Plaintiff should have very little independent decision making with no responsibility for the safety of others. (R. at 33.)

Substantial evidence also supports the ALJ's determination that work exists in significant numbers in the national economy that Plaintiff can perform consistent with her RFC and vocational factors. (R. at 40.) Therefore, the Court finds no error in the ALJ's finding that Plaintiff was not disabled as defined by the Act from January 1, 2020 through June 29, 2022. (R. at 41-42.)

On appeal, Plaintiff contends she cannot work because of her severe anxiety, depression, PTSD, and a prior head injury from a motor vehicle accident. (ECF No. 15, at 1; ECF No. 17, at 1; ECF No. 24, at 1.) She argues that her conditions make her emotionally unable to be around other people, cause "screaming, panic, and some mild seizures," require her to use a service dog for help when feeling unstable, and require that she stay "mostly always with [her] mother." (ECF No. 15, at 1; ECF No. 17, at 1.) Plaintiff also states that she takes medications daily that cause tremors and other "medical issues." (ECF No. 24, at 1, 2.)[6] Finally, Plaintiff contends that her benefits were improperly denied because a SSA investigator followed her. (ECF No. 15, at 1-2; ECF No. 17, at 1; ECF No. 24, 1-2.) The Court addresses these arguments in turn but none establish error in the ALJ's decision.

Regarding Plaintiff's prior head injury, the ALJ found no evidence that her traumatic brain injury 25 years earlier caused more than minimal ongoing restrictions in functioning. (R. at 30.) Although some speculated that Plaintiff's current symptoms remained tied to that prior injury, the ALJ found "no clinical evidence of an ongoing intracranial irregularity." (R. at 30.) Regarding Plaintiff's seizures, the record contained no evidence of any treatment for seizures, and the ALJ found such condition "not medically determinable." (R. at 31.) Plaintiff denied undergoing

---

[6] Plaintiff filed a letter from her mother in support of her appeal. (ECF No. 22.) This letter states that Plaintiff has "tremendous difficulty with her daily performances" and is "only getting worse." (ECF No. 22, at 1.) Plaintiff's mother confirms that she is always with Plaintiff. (ECF No. 22, at 1.) The letter also states that Plaintiff's daily medications only help her "somewhat" and that Plaintiff experiences frequent outbursts and cannot be in public alone. (ECF No. 22, at 1.)

seizure studies or taking medication for seizures. (R. at 37, 473.) She also failed to report any driving restrictions (R. at 57-58, 312) and did not list seizures as a "physical or mental condition[] … that limit[ed] [her] ability to work" (R. at 292). Given the record, the ALJ reasonably did not include traumatic brain injury or seizures as severe impairments. (R. at 30-31.) The record provides substantial support for these conclusions, and the Court finds no reason to disturb the ALJ's findings at step two. In addition, the ALJ properly considered all non-severe impairments in conjunction with the severe impairments in assessing Plaintiff's RFC. (R. at 31.)

Plaintiff next challenges how the ALJ considered her subjective complaints, including her statements that she cannot work outside of her home, experiences feelings of instability and panic, depends on her mother, requires a service dog, and experiences side effects from medications. The ALJ, however, appropriately explained how and why the record evidence did not support Plaintiff's subjective allegations, including by noting Plaintiff's reported activities, the routine nature of and her positive response to treatment, normal mental status findings at many appointments, and medical opinion evidence. The ALJ's analysis comports with applicable legal standards, and his conclusions find substantial support in the record.

The regulations provide for a two-step process in evaluating Plaintiff's subjective complaints in the disability determination. 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 16-3p, 2016 WL 1119029. First, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p). Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is

disabled." *Id.* The ALJ must consider all available evidence in this determination, including objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of the symptoms, and medical opinions and statements from others. *Id.* The claimant does not need to produce objective evidence to satisfy this second prong. *Id.*

Here, the ALJ followed this two-step process. Under the first prong, the ALJ found that Plaintiff's medically determinable impairments could lead to the alleged symptoms. (R. at 35.) And under the second prong, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (R. at 35.) The ALJ found that Plaintiff's records "document ongoing medical management of symptoms and outpatient psychotherapy," positive results from medication adjustment when needed, and "excellent" medication compliance and efficacy with no acute side effects. (R. at 36.) Assessments overall noted normal mood, and Plaintiff at times denied depression, stress, or anxiety. (R. at 36.) The record also established that Plaintiff could go to a store, leave her house for hair and nail appointments, eat at a restaurant, and socialize with others by phone or through social media. (R. at 36.) The ALJ acknowledged Plaintiff's alleged difficulties in social functioning and assigned marked limitations in that area as a result. (R. at 32.) Ultimately, the ALJ concluded that Plaintiff could perform unskilled work consistent with the adopted mental restrictions. (R. at 38.) Again, that conclusion is supported by substantial evidence. The Court finds no error in the ALJ's RFC determination.

While Plaintiff identifies certain evidence on appeal that she contends supports a finding of disability, the Court must refrain from reweighing the evidence or substituting its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472. As discussed above, the ALJ fully considered

16

Plaintiff's allegations regarding her inability to be around people, panic attacks, and reliance on her mother, and the Court found no error in the ALJ's conclusions regarding the same. To the extent Plaintiff now contends that her medications cause side effects, the ALJ reasonably considered record evidence showing excellent medication efficacy with no acute side effects reported. (R. at 36.) And while Plaintiff now contends that her condition requires the use of a service dog, the record before the ALJ indicated only the potential need for an emotional support animal. (R. at 36, 39, 514.) Specifically, Nurse Practitioner Moore-Zierow recommended that Plaintiff use an emotional support animal in her home and during aircraft travel to alleviate her emotional difficulties and enhance her ability to live independently. (R. at 39, 514.) The record does not contain sufficient evidence of any need for a service dog in the workplace, and the ALJ did not err in failing to include restrictions in Plaintiff's RFC relating to a service dog. *See Shue v. O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024) (finding no error in ALJ's failure to consider a service animal when determining the claimant's RFC where the claimant "did not provide evidence that the service dog was medically necessary" and "made no argument before the ALJ at all about the service dog limiting her ability to perform a job"). Because the ALJ reasonably considered conflicting record evidence and substantial evidence supports the ALJ's conclusions regarding the same, the Court finds no reversible error.

Finally, Plaintiff challenges the ALJ's consideration of a report from the Cooperative Disability Investigations Unit. The ALJ considered the report only for its observations regarding Plaintiff's visit to a restaurant on the day in question and her ability to communicate with others. (R. at 36.) Importantly, the ALJ gave "no consideration to the medical conclusions drawn" in the report. (R. at 36.) In addition, the ALJ did not overly focus on or emphasize this report. Instead, it was considered among other categories of record evidence, including Plaintiff's reported

17

activities, Plaintiff's treatment records, Plaintiff's examination findings, and medical opinion evidence and prior administrative medical findings. The ALJ did not err in referencing the Cooperative Disability Investigations Unit report and considering factual observations from the same.

## V.  CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 17), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 18), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: September 30, 2024